IN THE UNITED STATES DISTCIT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| RICHARD GÓMEZ, JR. § | |
| Plaintiff § | |
| § | |
| § | |
| v. § | |
| § | |
| § | |
| LEONIDES GÓMEZ, individually and § | |
| DBA, DUAL LANGUAGE § | |
| TRAINING INSTITUTE § | JURY TRIAL DEMANDED |
| Defendant § | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

This suit is between Dr. Richard Gómez, Jr., hereinafter "the Plaintiff" and Dr. Leonides Gómez individually and doing business as the Dual Language Training Institute, hereinafter "the Defendant" or "DLTI" and arises under the Lanham Act, 15 U.S.C. §§1501, et seq., breach of contract, unjust enrichment, and breach of fiduciary duties. Specifically, Plaintiff and Defendant are co-owners of a copyrighted work and Defendant has never accounted for profits as required of him, additionally, Defendant breached his contract with Plaintiff regarding his compensation for work performed promoting the jointly owned work. Defendant claims that he is sole owner of DLTI, thereby infringing on Plaintiff's trademark while simultaneously representing that Plaintiff is a co-owner of DLTI, and thereby causing confusion. As a result of claims set forth below Plaintiff has suffered injury and loss of profits.

## I.    PARTIES

1. Plaintiff Dr. Richard Gómez, Jr. ("Plaintiff") is a citizen and resident of Texas and resides at 2684 Greenhaven, Brownsville, Texas 78521 in the Southern District of Texas.

2. Defendant Dr. Leonides Gómez is a citizen and resident of Texas with a place of residence at 505 Pacific Avenue, Edinburg, Texas 78539 in the Southern District of Texas. He is also the brother of the plaintiff.

## II.     VENUE

3. This action arises under the federal trademark laws of the United States, and this court has jurisdiction under 28 U.S.C. §§1331 and 1338(a).  Additionally, 28 U.S.C. §1367 grants this Court supplemental jurisdiction over the state law claims included herein, which are so intertwined to the claims in this action that they are part of the same case or controversy.
4. The false representation and false advertising that is the basis for this suit took place in and was perpetuated in Hidalgo County, Texas.
5. The contract that is the basis for this suit was entered into, was performable, and was breached in Hidalgo County, Texas.
6. Defendant is a Texas citizen, and resides in Hidalgo County.
7. Defendant engages in business in the city of Edinburg, Hidalgo County, Texas and has committed the tort complained herein in Hidalgo County, Texas.

## III.     JURISDICTION

8. This Court has personal jurisdiction both general and specific, over Defendant who has established sufficient minimum contacts with this forum by, inter alia, purposely availing himself of conducting substantial business activities within this forum and by advertising and introducing products into the stream of commerce that cause harm in this district.  For example, Defendant advertises on his website using Plaintiff's image and prior work and representing to the public that Plaintiffs work and good will is Defendants' work and good will.  The use of these representations of Plaintiff's prior work falsely represent that the prior work and good will of the Plaintiff is that of the Defendant.  Accordingly, Defendant violates the Lanham Act and engages in false advertising in this forum by falsely and misleadingly representing that the Plaintiff's prior work as shown

on Defendant's website and representations to the public was Defendant's work and good will.

## IV.   BACKGROUND AND SUPPORTING FACTS

9. In 1995, Defendant provided a dual language model template to the Pharr –San Juan-Alamo School District to be included in a grant proposal.

10. In 1996, the grant was funded and Plaintiff and Defendant began working together to develop a dual language bilingual education model.

11. Since that time, both Plaintiff and Defendant have contributed equally in developing the dual language bilingual education model now known as the "Gómez and Gómez Dual Language Enrichment Model" (hereinafter, "the Model") by adding and updating content and the PowerPoint presentations used to train school districts, employees of school districts, and sub-contractors of DLTI on implementation and promotion of the Model.

12. From 1997 until 1999, the Parties would contract with school districts to conduct trainings or do other work promoting the Model.

13. On March 10, 2009, Defendant formally registered the Model with the United States Copyright Office under the authorship of "Leo Gómez and Richard Gómez, Jr." and with a publication date of March 01, 1999.

14. From 1999 until on or around December 1, 2004, Defendant became the "point person" or managing partner when dealing with the various school districts. Defendant directed that all checks be made payable to Defendant. Thereafter, Defendant would then distribute the agreed upon amounts to individuals who actually performed the work.

15. At that time, Plaintiff and Defendant entered into a valid continuing oral contract in which Plaintiff would conduct trainings and other work promoting the model, and Defendant would handle administrative duties (including, but not limited to making copies and scheduling) pertaining to those contracts for an agreed upon 10% fee of the total contract amount.

16. On occasions in which Plaintiff and Defendant conducted trainings and other work on the model jointly, they agreed that the fee was to be split equally

between them, and Defendant would retain, as agreed, 10% of Plaintiff's portion as an administrative fee.

17. On December 1, 2004, Defendant created DLTI, a sole proprietorship, to act as a clearinghouse that would handle the administrative work associated with promoting the Model. All checks were then made payable to DLTI and were then distributed to the individual who performed the actual work for the contract minus the 10% fee.

18. Sometime after the creation of DLTI, Defendant changed his contract with the subcontractors and began paying them a per diem rate. Defendant did not change his agreement with Plaintiff and continued to distribute the full contract amount minus 10% to Plaintiff.

19. Defendant created a website to promote the DLTI and the Model, and on that website, represents to the public that the parties are partners, having created the Model jointly and operating DLTI to facilitate training on the Model.

20. Plaintiff and Defendant were partners in all aspects of their work. Plaintiff performed as required and agreed upon and believed that Defendant continued to perform his duties under their contract.

21. Plaintiff's reasonably held belief that he and Defendant were partners arises from many facts including conversations he had with Defendant in which they discussed and jointly agreed to business decisions such as the approval of logos; letters sent to school districts on DLTI letterhead were signed by both parties; that Defendant has shared profits from endorsement agreements equally with Plaintiff, that Plaintiff has always contracted with school districts for trainings to be performed by DLTI without seeking approval of Defendant (leaving only the calendaring of the trainings to Defendant as part of Defendant's administrative work); that Plaintiff had recruited and trained sub-contractors for DLTI without seeking approval from Defendant, and that in situations in which Defendant was unable to work due to illness or injury for a lengthy period of time, Plaintiff performed trainings originally scheduled to be performed by both parties alone, but split the contract amount with Defendant as a partner.

22. If Plaintiff gave consent for Defendant to use his name on the DLTI website, it was solely because of his belief, and confirmed by the Defendant on numerous occasions, that they were partners. Plaintiff as such permitted the use of his name to promote their partnership. Plaintiff never consented to have his name used purporting to be a consultant or employee of Defendant's sole proprietorship or for Defendant's sole financial gain.
23. On September 22, 2014, Plaintiff and Defendant met in order to discuss the potential addition of new subcontractors. At this meeting Defendant, for the first time since the inception of the partnership, advised Plaintiff that they were not in fact business partners. Defendant asserted for the first time that DLTI was his sole proprietorship, and that all profits and decisions were his to make. Defendant also admitted that he had breached their continuing oral contract on or about September 2009 and began withholding arbitrary amounts of money in excess of 10% from Plaintiff's contract fee. This was without the knowledge of Plaintiff as Defendant was in total control of all business affairs, receipt of funds and distribution of earnings. At no time did Defendant advise Plaintiff of these actions, which were contrary to their partnership agreement.
24. To date, Defendant has never accounted for profits derived from the jointly owned copyright of the Model to Plaintiff.

### V. CAUSES OF ACTION
### COUNT I
### LANHAM ACT VIOLATION 15 USC §43(a)

25. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.
26. Defendant has made false designation of origin, false or misleading description of fact, or false or misleading representation of fact regarding his business.
27. Defendant has represented to the public and on Defendant's website that Plaintiff co-owns the Defendant's business thereby falsely misrepresenting Plaintiff's work and good will as Defendant's work and good will.

28. Defendant uses the website to advertise, offer services and sell services to various entities in commerce.
29. Defendant states on the website that the Dual Language Training Institute (DLTI) is owned by "Dr. Leo Gómez and Dr. Richard Gómez & associates". Now, however, Defendant insists that the DLTI is his sole proprietorship.
30. Defendant uses Plaintiff's name on every page of his website in order to capitalize on Plaintiff's positive reputation.
31. Plaintiff has never given his consent for his name to be exploited by Defendant solely to build Defendant's business. Rather, Plaintiff has been under the illusion that the Defendant and he were business partners and therefore the uses of his image was consented to on that basis.
32. Defendant's false and misleading representations of fact are likely to confuse consumers and cause them to mistake Defendant's work for the work of Plaintiff.
33. Defendant's false and misleading representations of fact are also likely to deceive customers as to the Plaintiff's approval of Defendant's services and commercial activities.
34. Defendant committed the aforementioned actions with knowledge that the representations of Plaintiff's work were intended to cause confusion, to cause mistake, and to deceive customers.
35. Defendant's aforementioned actions have damaged and continue to damage Plaintiff, both economically and otherwise.
36. Defendant's actions constitute on ongoing violation of Section 43(a) of the Lanham Act, codified at 15 U.S.C. §1125(a).
37. Defendant's false and misleading representations have injured and will continue to cause immediate and irreparable injury and damage to Plaintiff.
38. Plaintiff has no adequate remedy at law for these injuries. Such immediate and irreparable injury and damage will continue unless and until Defendant is enjoined by this Court.
39. Accordingly, Plaintiff is also entitled to an injunction under 15 U.S.C. §1116, prohibiting Defendant from further actions in violation of the Lanham Act.

40. Plaintiff is entitled to recover from Defendant any gains, profits, and advantages obtained by Defendant as a result of Defendant's acts alleged above, any damages that Plaintiff has sustained and will sustain, and the costs of the action. 15 U.S.C. §1117(a). At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiff.

41. On information and belief, Defendant knew that the representations were false and willfully and deliberately continued to make the misrepresentations thereby making this a case within the meaning of 15 U.S.C. §1117(a).

42. Plaintiff is also entitled to recover increased damages above the amount found as actual damages, not exceeding three times such amount, as provided by 15 U.S.C. §1117(a).

## COUNT II
## BREACH OF PARTNERSHIP AGREEMENT

43. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

44. In addition to or in the alternative, Plaintiff seeks compensation for Defendant's breach of their explicit or implicit partnership agreement.

45. Defendant currently maintains that he and Plaintiff have never been partners in DLTI or the business of marketing and providing services for the Model. However, he uses Plaintiff's name and good will in order to promote DLTI. The Defendant cannot have it both ways. Either his use of Plaintiff's name is a trademark violation, or the Parties are partners in DLTI providing services, training, and marketing for their Model.

46. A breach of implied partnership agreement claim includes: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise.

47. The Parties have a community of interest in the venture as both Parties invest their time and money to promote DLTI and the Model to school districts around the country. Each party pays for their own travel and accommodations without charging school districts for the initial visit to discuss the Model and to arrange DLTI services to aid school districts in implementing the Model.

48. Defendant has also shared profits from endorsement deals equally with Plaintiff, and had agreed to equally divide profits with Plaintiff for services that they performed jointly.
49. The partnership has not endured true losses yet, however, as already mentioned, each Party has agreed to pay their own share of expenses associated with promoting the partnership.
50. The parties have had a mutual right of control and management of the enterprise as evidenced by Plaintiff's ability to contract with school districts without permission from Defendant and the fact that Plaintiff has brought sub-contractors on board with DLTI without Defendant's permission or approval.
51. Defendant's breach has caused and continues to cause loss of profits to Plaintiff and unjust enrichment of Defendant at the expense of Plaintiff, and injury to Plaintiff.
52. Under the common law of the State of Texas, Defendant's breach of the partnership agreement would entitle Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, and an accounting of the partnership.

**COUNT III**

**FRAUD**

53. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs and in particular paragraphs 9-24 as if fully set forth herein.
54. Defendant's actions in withholding funds and information of a financial nature from the Plaintiff constitutes fraud.
55. Defendant by his actions failed to disclose material facts within his knowledge and knowing that Plaintiff was ignorant of the facts and did not have an opportunity to discover the truth and thereby intended to induce Plaintiff to continue his participation in DLTI which resulted in Plaintiffs injuries. Plaintiff acted without knowledge of the undisclosed facts.
56. Plaintiff was not aware of the actions of his partner until September 22, 2014.

## COUNT IV
## CONVERSION

57. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.
58. By virtue of the partnership agreement Plaintiff was owed at a minimum fifty percent (50%) of all the monies obtained by the Defendant.
59. Defendant purposefully misled Plaintiff into believing that he was accounting as previously agreed upon, i.e. one-half of all proceeds would be forwarded to Plaintiff less a 10% administrative overhead charge, to which Plaintiff had in fact agreed.
60. Defendant has over a period of at least the last 10 years wrongfully acquired and exercised dominion and control over Plaintiff's property-funds in the bank account(s) of DLTI.
61. Defendant wrongfully acquired possession of Plaintiff's funds and has wrongfully exercised dominion and control over the property by using it in a way that departed from the conditions it was agreed upon.
62. Defendant has refused to return the property on Plaintiff's demand.
63. Defendant's acts amounted to clear repudiation of Plaintiff's rights under their partnership agreement.
64. A demand for the return and accounting of the funds has been made but Defendant has steadfastly refused to account or return the funds rightfully belonging to the Plaintiff.
65. Plaintiff brings a claim for conversion of funds.

## COUNT V
## BREACH OF CONTRACT

66. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.
67. A breach of contract claim includes: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.

68. The parties' agreements are valid and enforceable contracts.  Under these contracts, Defendant agreed to pay Plaintiff the full amount billed for each training he performed minus 10% when Plaintiff did the training alone, and half of the full amount billed minus 10% when Plaintiff did the training with a partner.
69. Plaintiff fully performed his contractual obligations by conducting each training.
70. Defendant intentionally and materially breached the contracts by misappropriating the money due Plaintiff and keeping funds in excess of 10% of the full amount billed for the trainings performed by Plaintiff since 2009.
71. Defendant's breach has caused and continues to cause loss of profits to Plaintiff and unjust enrichment of Defendant at the expense of Plaintiff, and injury to Plaintiff.
72. Plaintiff would further allege that under the continuing contract doctrine he is entitled to lost profits for the last four years that Defendant unlawfully and unjustly withheld more funds than he was entitled to.
73. Under the common law of the State of Texas, Defendant's breach of contract entitles Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, Defendant's profits resulting from his unlawful conduct, reasonable attorneys' fees, costs, expenses, and pre-and post-judgment interest.
74. Pursuant to Texas Civil Practice and Remedies Code Chapter 38, Plaintiff is entitled to recover reasonable attorneys' fees because this suit is for breach of an oral contract.  Plaintiff retained counsel, who presented Plaintiff's claim to Defendant.  Defendant failed to tender any payment or other remedy for his breach of the parties' agreement within 30 days of when the claim was presented to him.

## COUNT VI
## UNJUST ENRICHMENT

75. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

76. The Defendant was enriched, the Plaintiff was impoverished, the enrichment and impoverishment were causally connected, justification existed for the enrichment and impoverishment and Defendant claims that the Plaintiff has no remedy at law.
77. Defendant obtained a benefit from Plaintiff by taking undue advantage of Plaintiff's trust in him.
78. The Defendant was unjustly enriched by means of misappropriating Plaintiff's share of the profits derived from exploitation of their jointly owned and copyrighted intellectual property.
79. Unjust enrichment characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation.
80. Defendant has been exploiting the Gómez and Gómez Dual Language Enrichment Model for his financial benefit and has never shared profits from this exploitation with the Plaintiff as required of him by law.
81. Defendant has been made aware of the obligations he has to Plaintiff as a co-owner of intellectual property and still refuses to account for profits to Plaintiff.
82. Allowing Defendant to keep the Plaintiff's share of the profits that he has earned by exploiting their joint property would offend all traditional notions of equity.

## COUNT VII
## BREACH OF FIDUCIARY DUTIES

83. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.
84. As joint authors of copyrighted intellectual property, brothers, and business partners the parties have a fiduciary relationship to one another and on one another's behalf.
85. Additionally, Defendant acted as a trustee by appointing himself managing partner and receiving checks for services rendered by Plaintiff. This relationship also gives rise to fiduciary duties owed by Defendant to Plaintiff.

86. Defendant has breached his fiduciary duties to the Plaintiff and has redirected Plaintiff's share of profits derived through exploitation of their jointly owned intellectual property to his own benefit.
87. Defendant has also breached his fiduciary duties to the Plaintiff by violating their agreement and withholding more than 10% of the funds entrusted to him.
88. Defendant has willfully and without legal justification retained funds rightfully belonging to Plaintiff.
89. Defendant's breach has caused and continues to cause loss of profits to Plaintiff.
90. Under the common law of the State of Texas, Defendant's breach of fiduciary duties entitles Plaintiff to preliminary and permanent injunctive relief and damages, including but not limited to actual damages, exemplary damages, an accounting, and a constructive trust on the proceeds of the Defendant's breach.

## COUNT VIII
## EQUITABLE ACCOUNTING

91. Plaintiff incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.
92. Plaintiff is entitled to an order requiring Defendants to render an accurate accounting of the profits derived through Defendants' exploitation of the Model and to disgorge half of said profits to Plaintiff.
93. Plaintiff further requests that the Court appoint a special master to supervise and certify the accuracy of the accounting.
94. As shown herein, justiciable issues exist regarding the rights and status of the Plaintiff in relation to his Partnership interest and interest in the Model.
95. Pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiff seeks a declaratory judgment determining:
    a. The status of each partner's capital account as of the date Plaintiff was admitted as a partner;
    b. The rights of each partner upon wind up of the Partnership;
    c. The final accounting of the Partnership

96. Pursuant to §37.009 of the Texas Civil Practice and Remedies Code, Plaintiff is entitled to an award of attorney's fees and costs.

## VI.     DISCOVERY DOCTRINE INVOKED

97. Plaintiff hereby invokes the discovery doctrine and would show that he had no ability or reason to know or should have known of the Defendant's illegal and unlawful practices until shortly before filing this action.

## VII.    INJUNCTIVE RELIEF REQUESTED

98. Plaintiff requests extraordinary relief in the form of immediate appointment of a receiver to take control of half of the funds, contracts and payments that are obligated to DLTI. For such receiver to seize control of all DLTI and began an immediate accounting of funds by employing such individuals necessary for an audit and inventory.

## VIII.   JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays for judgment in their favor on all counts in the Complaint and requests relief as follows:

A. Temporarily, preliminarily, and permanently enjoin the Defendant and all persons or entities acting in concert or participation with him from directly or indirectly:
   a. Making any false designation of origin, false or misleading description of fact, or false or misleading representation of fact regarding his business;
   b. Breaching the Agreement;
   c. Deleting, destroying, shredding, altering, erasing, or otherwise modifying or causing or permitting anyone else to delete, destroy,

shred, alter, erase or otherwise modify any evidence relating to this action;

d. Unjustly enriching himself by misappropriating Plaintiff's share of profits derived from their jointly owned copyrighted work.

B. That Plaintiff be awarded compensatory damages it has suffered, in an amount to be proven at trial;

C. That Plaintiff be awarded damages in the form of all of Plaintiff's losses it has suffered, in an amount to be proven at trial;

D. That Plaintiff be awarded damages in the form of half of Defendant's profits in an amount to be proven at trial;

E. That Plaintiff be awarded punitive and/or exemplary damages for all claims for which such damages are authorized;

F. That Plaintiff be awarded attorneys' fees and the costs of this action as permitted by statute;

G. That Defendants be ordered to disgorge all improper benefits, profits, and/or gains;

H. For an accurate accounting of the Partnership;

I. For a constructive trust for the benefit of Plaintiff to be imposed upon all funds, assets, revenues, and profits derived from the unlawful acts and misappropriation of Plaintiff's funds and trademark;

J. For prejudgment and post judgment interest at the maximum legal rate, as provided by the laws of Texas, as applicable, as an element of damages which Plaintiff has suffered as a result of the wrongful and illegal acts complained of herein; and

K. That Plaintiff be awarded demand for judgment for all other relief to which Plaintiff is entitled.

L. That Plaintiff be awarded such other and further relief as the Court deems equitable and just.

Respectfully submitted,

BY:*/s/ Ruben R. Pena*

RUBEN R. PEÑA
Texas Bar No. 15740900
Federal ID No. 1216
2900 Central Blvd., Suite B
Brownsville, Texas 78520
Telephone No. (956) 546-5775
Facsimile No. (956) 546-5778
Riolaw1@aol.com